## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | | |
|---|---|---|
| **SPARTA INSURANCE COMPANY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **VS.** | ) | **CIVIL ACTION NO.: 17-323** |
| | ) | |
| **VILLIE MOORE;** | ) | |
| **SOUTHEASTERN** | ) | |
| **EXTERMINATING, INC.; and** | ) | |
| **MICHAEL J. HOLLIS,** | ) | |
| | ) | |
| **DEFENDANTS.** | | |

### COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW** the Plaintiff, SPARTA Insurance Company (hereinafter "SPARTA"), and files this action for declaratory relief pursuant to Rule 57 of the *Federal Rules of Civil Procedure,* 28 U.S.C.A. § 2201, et seq., and 28 U.S.C.A. §§ 1332 and 1333, and in support thereof states as follows:

### PARTIES

1. SPARTA is a company organized under the laws of the State of Connecticut, and for federal court jurisdiction and diversity purposes, its principal place of business is located in the State of Connecticut. Pursuant to Local Rule 3.4, a copy of SPARTA's Corporate Disclosure Statement is filed contemporaneously herewith.

2. Villie Moore ("Moore") is an individual and citizen of the State of Alabama.

3. Southeastern Exterminating, Inc. ("Southeastern") is a business organized under the laws of the State of Alabama and for federal court jurisdiction and diversity purposes, its principal place of business is located in Mobile, Alabama.

4. Michael J. Hollis ("Hollis"), upon information and belief, is an individual and citizen of the State of Alabama.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332, and the *Declaratory Judgment Act*, 28 U.S.C.A. § 2201, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because there exists complete diversity of citizenship among the Plaintiff and Defendants.

6. In a declaratory judgment action, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F. 3d 805, 807 (11th Cir. 2003). The plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Where an insurer seeks a determination that it has no duty to defend a separate underlying lawsuit, the court may take into account not only the recovery sought in the underlying lawsuit, but also "[t]he

pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount." *Stonewall Ins. Co. v. Lopez*, 544 F. 2d 198, 199 (5th Cir. 1976); *SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F. Supp. 2d 1245, 1251 (S.D. Ala. 2010).

7. The amount in controversy requirement in this case is satisfied because the subject policy, the amount claimed in the underlying litigation, and the costs of defense exceed the threshold amount. The policy at issue in this declaratory judgment action provides a per occurrence bodily injury and property damage liability limit of $1,000,000.00. In addition, the amount claimed as damages by Villie Moore (Plaintiff in the underlying proceeding in the Circuit Court of Mobile County, Alabama), together with the anticipated costs of defense, exceed the statutory threshold of $75,000.00, exclusive of costs, attorneys' fees or interest. *See Stonewall Ins. Co.*, 544. F.2d at 199 (court considered policy limit together with the cost of defense to determine whether the amount in controversy exceeded the jurisdictional amount).

8. Venue is proper in the United State District Court for the Southern District of Alabama, Mobile Division, pursuant to 28 U.S.C.A. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district. Moreover, as stated above, Defendant Villie Moore's lawsuit was filed and discovery ensued in Mobile County, Alabama and the

facts and circumstances giving rise to the coverage issues at stake took place in Mobile County. Mobile County, Alabama lies within the purview of the United States District Court for the Southern District of Alabama, Mobile Division.

## FACTUAL BACKGROUND

### A. General Background

9.  The present matter involves insurance coverage questions arising out of a lawsuit filed by Ms. Moore in the Circuit Court of Mobile County, Alabama against Southeastern, Hollis, and other defendants (hereinafter referred to as "Underlying Litigation"). (*See* Moore Complaint, attached hereto as Exhibit "A").

10. SPARTA provided insurance coverage to "Southeastern Exterminating" for the policy periods of March 11, 2009 to March 11, 2010, March 11, 2010 to March 11, 2011, March 11, 2011 to March 11, 2012, and March 11, 2012 to March 11, 2013. Thereafter, and upon information and belief, Southeastern was insured by Everest Indemnity Insurance Company.

11. Due to the allegations of Ms. Moore's Complaint, as detailed below, the timing of Ms. Moore's alleged damages, the applicable law, and the language of SPARTA'S policies, SPARTA contends that no coverage exists under any policy of insurance issued by SPARTA to "Southeastern Exterminating."

12. Despite this, SPARTA is presently providing a defense to Southeastern and Hollis in the Underlying Litigation pursuant to a Reservation of Rights, a copy of which is attached hereto as Exhibit "B". SPARTA has no duty to continue the defense being provided to Southeastern and Hollis under the Reservation of Rights.

**B. Allegations of Ms. Moore's Complaint**

13. As referenced above, this matter arises from allegations made in a complaint filed by Ms. Moore in the Circuit Court of Mobile County, Alabama (Ex. A, Moore Compl.). The Complaint named Southeastern, Hollis, as well as two non-parties to this action – EAL, LLC dba Environmental Security, Inc., ("EAL") and Clinton Wells Killingsworth ("Killingsworth"). SPARTA incorporates by reference the claims and allegations of Ms. Moore's Complaint as if fully set out herein.

14. According to the Complaint, Ms. Moore, along with her late husband (referred to collectively as the "Moores"), built their home in 2008. At that time, the Moores paid Southeastern "hundreds of dollars" to provide termite treatments to the home.

15. Ms. Moore alleges that Southeastern claimed to have treated the home in a single trip, using a gallon of Boracare and 18 gallons of Premise. The Plaintiff alleges that Boracare is ineffective in the geographical region at issue.

16. Ms. Moore also alleges that Southeastern deceived her by telling her the home was receiving termite treatments each year at the annual renewal. However, according to Ms. Moore, the treatments were ineffective. Ms. Moore contends that had Southeastern provided a proper treatment, the Moore's home would not have been infested with termites.

17. In 2012 or 2013, Ms. Moore allowed the Southeastern bond to lapse.

18. In the fall of 2014, Ms. Moore discovered termites in her living room walls. At that point, she contacted Southeastern, who informed her it would cost hundreds of dollars to reinstate her as a customer and provide "spot treatment" to the home.

19. The Moores then contacted EAL to provide a comprehensive liquid termite treatment and retreatment warranty. The Moores also allege EAL improperly treated the home, despite representations that it would do just that. As a result, termites continued to infest and damage the home, resulting in various damages to Ms. Moore, including mental anguish.

20. Based upon these factual allegations, Ms. Moore has brought a number of causes of action against Southeastern and Hollis, including Fraudulent Misrepresentation/Suppression, including Promissory Fraud, Negligence, Recklessness, and Negligence Per Se, Negligent Hiring, Training, Supervision, and Retention, Breach of Contract, and Equitable Relief pursuant

to the "Made Whole Doctrine." All of these claims are set out in full in Ms. Moore's Complaint, attached as Exhibit "A".

21. Ms. Moore claims compensatory damages, including mental anguish, punitive damages, equitable relief, and other damages.

## C. SPARTA Policy and Applicable Language

22. As previously stated, SPARTA issued four policies to "Southeastern Exterminating" from March 11, 2009 to March 11, 2013. Policy 011GL04799, dated March 11, 2012 to March 11, 2013 (hereinafter referred to as the "Policy") included a Commercial General Liability Form, as well as a number of additional endorsements. Specifically, the Policy included the following pertinent language:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as   damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b**.    This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)**    Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c**.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1**. of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d**.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an

"occurrence" or claim:

**(1)**   Reports, all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.**   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a.**   **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.**   **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**   That the insured would have in the absence of the contract or agreement; or

**(2)**   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

and

**(b)**   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

[. . .]

**j.   Damage to Property[1]**

"Property damage" to:

. . .

**(5)**   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

[. . .]

---

[1] Amended by Endorsement GL RPG PEST 02 08 08

### 3 YEAR INSPECTION LIMITATION WAIVED[2]

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE "PROPERTY DAMAGE EXTENSION FOR INSPECTIONS" ENDORSEMENT.

THE FOLLOWING PARAGRAPHS ARE EXCLUDED FROM THE ABOVE NAMED ENDORSEMENT;

1. A. 1. INSURING AGREEMENT, C. THIS INSURANCE APPLIES TO "PROPERTY DAMAGE" ONLY IF A CLAIM FOR DAMAGES IS FIRST MADE TO US WITHIN THREE (3) YEARS FROM THE DATE OF THE ACTUAL PHYSICAL INSPECTION OF THE "REAL PROPERTY", AS NOTED ON THE "INSPECTION CONTRACT". A CLAIM BY A PERSON OR ORGANIZATION SEEKING DAMAGES WILL BE DEEMED TO HAVE BEEN MADE WHEN WRITTEN NOTICE OF SUCH CLAIM IS RECEIVED BY THE INSURED.

2. A. 2. EXCLUSIONS, IV. ANY "INSPECTION CONTRACT" WHERE THE ACTUAL INSPECTION DATE NOTED ON THE CONTRACT IS MORE THAN THREE (3) YEARS PRIOR TO THE DATE THE CLAIM IS MADE TO US.

ADDITIONALLY, PARAGRAPH E. ADDITIONAL CONDITIONS, 1. IS DELETED AND REPLACED BY THE FOLLOWING;

YOU MUST MAINTAIN AND HAVE ALL BOOKS, REPORTS, RECORDS, INCLUDING THE "INSPECTION CONTRACT", ANY REPORT REQUIRED BY STATUTE, ORDINANCE OR REGULATION OF ANY FEDERAL, STATE OR LOCAL GOVERNMENT, AND ALL INFORMATION REGARDING THE INSPECTION OF ANY "REAL PROPERTY" AT ANY TIME A CLAIM IS MADE.

WE MAY EXAMINE YOUR BOOKS, REPORTS, RECORDS, INCLUDING THE "INSPECTION CONTRACT", ANY REPORT REQUIRED BY STATUTE ORDINANCE OR REGULATION OF ANY FEDERAL, STATE OR LOCAL GOVERNMENT, AND ALL INFORMATION AT ANY TIME A CLAIM IS MADE. FAILURE TO MAINTAIN SUCH RECORDS; INCLUDING BUT NOT LIMITED TO BOOKS, REPORTS, RECORDS, INCLUDING THE "INSPECTION CONTRACT", ANY REPORT REQUIRED BY STATUTE, ORDINANCE OR REGULATION OF ANY FEDERAL, STATE OR LOCAL

---

[2] Policy 011GL00301, covering Policy Period March 11, 2009 to March 11, 2010, does not contain Endorsement MAN-GL, 3 Year Inspection Limitation Waived.

GOVERNMENT, AND ALL INFORMATION REGARDING THE INSPECTION OF ANY "REAL PROPERTY"; AND/OR NOT MAKE THEM AVAILABLE TO US WILL RESULT IN THE DENIAL OF COVERAGE FOR ANY CLAIM OR SUIT.

MAN-GL (01/02)

[…]

**SPARTA INSURANCE COMPANY**            **COMMERCIAL GENERAL LIABILITY**
**GL RPG PEST 04 08 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PROPERTY DAMAGE EXTENSION FOR INSPECTIONS[3]**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY FORM

[…]

**A.   COVERAGE**

**1.   Insuring Agreement**

We will pay those sums which the insured becomes legally obligated to pay as damages because of "property damage", caused by an insured's failure to identify the present or past existence of "wood destroying organisms" in the area(s) the Insured inspected on the date the Insured inspected the "real property" or "property damage" existing prior to the inspection, described in the "inspection contract", and to which this insurance applies.

The amount we will pay as damages is limited as described in paragraph B. of this endorsement.

The "property damage" must have been caused by a "wood destroying organism" specified in the "inspection contract", and the "property damage" must have been visible, accessible and in existence at the time of inspection.

---

[3] Amended by Endorsement MAN-GL (01/02), except in Policy 011GL00301, covering the policy period of March 11, 2009 to March 11, 2010.

This replaces and is not in addition to any other property damage coverage that might apply under this policy.

**2. Exclusions**

This insurance does not apply to:

**a.** Any cost or expense to treat, re-treat, inspection or re-inspection for "wood destroying organisms".

**b.** Any act, error or omission an insured committed with fraudulent, dishonest, criminal or malicious purpose or intent.

**c.** Inspections made to renew "wood destroying organism" treatment warranties or guarantees that are not covered by this endorsement.

**d.** Any "inspection contract" with an inspection date prior to the effective date of the policy, as shown in the Declarations page of the policy, or after the termination date of the policy.

**e.** Any "inspection contract" where the actual inspection date noted on the contract is more than three (3) years prior to the date the claim is made to us.

[…]

## D. ADDITIONAL DEFINITIONS

For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions section:

1. "Inspection contract" means a contract between you and your client, written and dated by the insured in conjunction with a "wood destroying organism" inspection which was conducted solely in anticipation of the sale, refinancing or purchase of "real property". The "inspection contract" must be written on the form prescribed by the State or other regulatory agency, if any.

2. "Real property" means the permanent structure or building described in the "inspection contract". "Real Property" includes personal property.

3. "Wood destroying organism(s)" means Arthropod or plant life which infest and damage seasoned wood in a structure, such as, termites, powder post beetles; old house borers; and wood decaying fungi.

**E.** For the purposes of coverage provided by this endorsement, the following conditions are added to **Section IV – Commercial General Liability Conditions.** Coverage is effective only if all of the following conditions are met:

    **1.** This insurance applies to "property damage" only if a claim for damages is first made to us within three (3) years from the date of the actual physical inspection of the "real property", as noted on the "inspection contract". A claim by a person or organization seeking damages will be deemed to have been made when written notice of such claim is received by the insured.

    […]

    **5.** On the date of the inspection, you must complete a written inspection report containing the following information:

        **a.** Date of inspection.
        **b.** Location of inspected "real property", identifying each "real property" inspected and not inspected at location.
        **c.** Complete name of person who performed the inspection.
        **d.** Areas of "real property" where visible evidence of "wood destroying organisms" were found.
        **e.** Areas of "real property" where visible evidence of previous "wood destroying organism" treatments were found.
        **f.** Areas of "real property" which were not inspected and explanation of why it was not inspected.

    **6.** You must maintain books, reports, records, including the "inspection contract", any report required by statute, ordinance or regulation of any federal, state or local government, and all information regarding the inspection of any "real property" for a period of not less than three (3) years from the date of each such inspection.

    We may examine your books, reports, records, including the "inspection contract", any report required by statute, ordinance or regulation of any federal, state or local government, and all information at any time during the policy period and up to three (3) years thereafter.

Failure to maintain such records; including but not limited to books, reports, records, including the "inspection contract", any report required by statute, ordinance or regulation of any federal, state or local government, and all information regarding the inspection of any "real property"; and/or not make them available to us will result in the denial of coverage for any claim or suit.

**7.** All contracts prepared by you, relating to "real property", must be in writing and signed by you and your client. All work papers and government required forms, if any, prepared by you relating to the "real property", including, but not limited to, reports, graphs and contracts, must contain the date(s) of all actions taken by you with respect to the "real property" and must remain on file with you.

**8.** If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, the coverage provided by this endorsement will be excess over any other insurance, whether primary, excess, contingent or on any other basis.

**SPARTA INSURANCE COMPANY**                **COMMERCIAL GENERAL LIABILITY**
**GL RPG PEST 05 08 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PROPERTY DAMAGE EXTENSION FOR
TREATMENT / RENEWAL**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY FORM

[…]

**A.   COVERAGE**

**1.   Insuring Agreement**

We will pay, those sums which the insured becomes legally obligated to pay as damages because of "property damage" to "real property", caused by the infestation of: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or insects as specified

in the "treatment contract", for such services, which occurs after the "actual treatment" and to which this insurance applies.

The amount we will pay as damages is limited as described in paragraph **B**. of this endorsement.

This replaces and is not in addition to any other "property damage" coverage that might apply under this policy.

### 2.    Exclusions

This insurance does not apply to:

**a.** The expense of treatment, retreatment, inspection or re-inspection of any "real property".

**b.** Any act, error or omission an insured committed with fraudulent, dishonest, criminal or malicious purpose or intent.

**c.** Any "property damage" occurring before the "actual treatment" date as shown in your "treatment contract" or after the end of the policy period.

**d.** Any "property damage" not caused by: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or other insects identified in the "treatment contract".

**e.** Any spot or partial treatments.

**f.** Any "property damage" to "real property" that has not had a "renewal inspection" within twenty four (24) months of your last "renewal inspection" or "actual treatment".

## B. LIMITS OF INSURANCE

This coverage is subject to the Each Occurrence and General Aggregate Limits shown in the Declarations of this policy and is included within, not in addition to, the policy limits.

[…]

## D. ADDITIONAL DEFINITIONS

For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions section:

**1.** "Actual treatment" means a complete chemical treatment, of the entire "real property", according to the "directions for use" as outlined in the

"treatment contract" for the eradication of Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and /or other insects identified and listed on the "treatment contract". "Actual treatment" does not include spot or partial treatments.

2. "Directions for use" means all instructions listed on the chemical label and labeling referring to the concentration, mixing, application, treatment directions and any other procedures to be followed when using the chemical. "Directions for use" also means any applicable Federal, State and local regulations prevailing at the time of the chemical is administered.

3. "Treatment contract" means a written contract between you and your client, issued and dated by you in conjunction with an "actual treatment". "Treatment contract" includes the graph or description of "real property".

4. "Real property" means the structure(s) or building(s) as described in the "treatment contract". "Real Property" includes personal property.

5. "Renewal inspection" means the issuance of a written report regarding the physical inspection of the entire "real property" conducted by you within each twenty-four (24) month period after the initial "actual treatment" described in the "treatment contract".

E. For the purposes of coverage provided by this endorsement, the following conditions are added to **Section IV - Commercial General Liability Conditions**. Coverage is effective only if all of the following conditions are met:

1. You must complete a graph showing the areas of the "real property" illustrating treated and, untreated areas, the dimensions of the structure(s) or building(s), present and past infestation, and present and past damage. The graph must be attached to the "treatment contract."

2. You must charge a fee for your services.

3. Nothing in the "Treatment Contract" shall extend or broaden the scope of coverage afforded by this endorsement.

**4.** You must maintain the "treatment contract" and all the written, detailed records of any and all work performed by you from the date the "actual treatment" started.

We may examine your "treatment contract" and all information regarding the "actual treatment" and the "renewal inspection" of the "real property" at any time after the date of "actual treatment".

Failure to maintain such records; including but not limited to the "Treatment Contract", information regarding the "actual treatment" of the "real property", any report required by statute, ordinance or regulation of any federal, state or local government, or other pertinent information regarding the "actual treatment" of the "real property"; and/or not make them available to us will result in the denial of coverage for any claim or suit.

**5.** All contracts must be in writing and signed by you and your client. All work papers must contain the date(s) of all actions taken with respect to the "real property".

[…]

SPARTA Policy 011GL04799, attached hereto as Exhibit "C".

23. Additionally, due to variations in the policies issued by SPARTA to Southeastern, and in the interest of full disclosure, Policy 011GL00301, covering policy period March 11, 2009 to March 11, 2010, is hereby attached as Exhibit "D"; Policy 011GL00969, covering policy period March 11, 2010 to March 11, 2011, is hereby attached as Exhibit "E"; and Policy 011GL02025, covering policy period March 11, 2011 to March 11, 2012, is hereby attached as Exhibit "F". Each attached policy is hereby incorporated by reference as if fully set out herein.

## COUNT I

### SPARTA OWES NEITHER A DEFENSE NOR INDEMNITY TO SOUTHEASTERN OR HOLLIS FOR ANY OF THE CLAIMS ARISING OUT OF THE UNDERLYING LITIGATION

24. SPARTA adopts and incorporates paragraphs 1 - 24 as if fully set forth herein.

25. SPARTA asserts there is no insurance coverage afforded under any policy of insurance issued to Southeastern by SPARTA for the claims and damages at issue in the Underlying Litigation. A review of Ms. Moore's Complaint and evidence gathered to date reveal numerous coverage issues. As a result of the allegations of the underlying case and applicable policy language, the claims and resulting damages in the underlying litigation are not covered by the SPARTA Policy.

26. First, the "property damage" and "bodily injury" alleged by the Plaintiff manifested outside of SPARTA's policy periods according to the applicable insuring agreements. Specifically, Ms. Moore alleges in her Complaint that termite damage was first discovered in the fall of 2014, well after the lapse of the SPARTA Policy on March 11, 2013.

27. Second, given the allegations of Ms. Moore's Complaint, the timing of the alleged damages, and the other facts of this matter, the various property damage extension endorsements do not provide coverage in this matter.

Specifically, the evidence and allegations in the Underlying Litigation establish:

a. Given the discovery of the alleged termite damage in the fall of 2014, there is no evidence that Southeastern[4] or any other insured failed to "identify the present or past existence of 'wood destroying organisms' in the area(s) [Southeastern] inspected on the date [Southeastern] inspected the 'real property' or 'property damage' existing prior to the inspection, described in the 'inspection contract', …".

b. No "wood destroying organisms" were in existence at the time Southeastern performed its inspections;

c. No "property damage" caused by a "wood destroying organism" existed at the time of or prior to Southeastern's inspections of Ms. Moore's property;

d. No alleged "property damage" caused by a "wood destroying organism" was visible, accessible and in existence at the time of Southeastern's inspections;

e. Ms. Moore's Complaint alleges fraudulent, dishonest and/or malicious purpose or intent on the part of Southeastern;

---

[4] When used in this section of the Complaint, the term "Southeastern" includes any insured under the policy, including, but not limited to, Hollis.

f.  Any alleged "inspection contract" is dated prior to the effective date of any policy issued by SPARTA;

g.  Southeastern failed to create and/or retain documents and records required by the Policy, which is a violation of several conditions precedent to coverage under the various policy endorsements;

h.  The documents created by Southeastern failed to include the necessary information, signatures, and other requirements, as set out by the conditions precedent to coverage under the various policy endorsements;

i.  Any alleged "property damage" occurred after the expiration of SPARTA's various policies;

j.  Ms. Moore's property had not had a "renewal inspection" within 24 months of Southeastern's last  "renewal inspection" or "actual treatment";

k.  Based on Ms. Moore's Complaint, Southeastern's treatment of the property may not constitute an "actual treatment," as that term is defined by the Policy;

l.  The contract between Southeastern and the Moores was not signed by the Moores.

28. Additionally, some or all of the allegations against Southeastern and Hollis do not amount to an "occurrence," as that term is defined by the Policy and applicable law. Specifically, claims of intentional conduct do not meet the definition of an "occurrence." Likewise, at least a portion of the damages sought by Ms. Moore do not amount to "bodily injury" or "property damage," including, but not limited to, any claim for equitable relief. To the extent that the Plaintiff's claims do not seek damages for "bodily injury" or "property damage" caused by an "occurrence" during the policy periods mentioned above, there is no coverage available under the SPARTA policies issued to Southeastern.

29. The exclusions set out above also exclude some or all of the damages sought by Ms. Moore in the Underlying Litigation, including, but not limited to, the "Expected or Intended Injury" exclusion, the "Contractual Liability" exclusion, and the "Damage to Property" exclusion, which was amended by Endorsement GL RPG PEST 02 08 08.

30. Additional portion of the various policies issued by SPARTA to Southeastern may apply, and potentially applicable language is cited above in Paragraph 23. Moreover, the entire policies, including, but not limited to, any applicable definitions, are hereby incorporated by reference and are attached hereto as Exhibits "C", "D", "E", and "F".

**WHEREFORE, PREMISES CONSIDERED**, SPARTA seeks a declaration from this Court as follows:

A. That a bona fide justiciable controversy exists between the parties which should be resolved;

B. That the subject SPARTA policies, and all amendments, provisions, endorsements and exclusions are clear and unambiguous;

C. That SPARTA does not have a duty to defend or indemnify Southeastern or Hollis for any of the underlying claims alleged by Moore; and

D. Granting SPARTA such other, further, and different relief to which it may be entitled.


**Respectfully Submitted,**

/s/ *Allan S. Jones*
**ALLAN S. JONES (ASB-4458-E37A)**
**JORDAN D. WATSON (ASB-2370-O61W)**
Attorneys for SPARTA Insurance Company


**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
jwatson@carrallison.com
T: (205) 822-2006
F: (205) 822-2057

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AT**:

Villie Moore
5523 Greenleaf Drive
Mobile, Alabama 36693

Southeastern Exterminating, Inc.
Attn: Michael J. Hollis
7251 Grelot Road
Mobile, AL 36695

Michael J. Hollis
7251 Grelot Road
Mobile, AL 36695