## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SPARTA INSURANCE CO., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION: 17-00323-KD-M |
| | ) | |
| VILLIE MOORE, *et al.*, | ) | |
|     Defendants. | ) | |

## ORDER

This matter is before the Court on Sparta Insurance Company (Sparta)'s *partial*[1] motion for summary judgment (Docs. 39, 40), the Response of Southeastern Exterminating, Inc. and Michael J. Hollis (Southeastern) (Doc. 42) and Sparta's Reply (Doc. 45).[2]

## I.     Findings of Fact

This insurance coverage dispute is the result of hungry termites.  Defendant Southeastern Exterminating, Inc. (and its President and Owner Michael J. Hollis) (Southeastern) is an Alabama termite and pest control company.  (Doc. 1 at 2; Doc. 42-9 (Decltn. Hollis)).  Plaintiff Sparta Insurance Company (Sparta) is a Connecticut insurance company which insured Southeastern under commercial general liability insurance policies from March 11, 2009 to March 11, 2013.  (Doc. 1 at 1; Doc. 40-8 at 2; Doc. 42-9 (Decltn. Hollis); Doc. 42-5).  Defendant Villie Moore (Moore) is an individual and Alabama resident who, in 2008, along with her husband, constructed a residential home.  She hired Southeastern to inspect and treat the home for termites and issue a Formosan Termite Contract (Bond).  The termite bond issued on March 25, 2008.  (Doc. 1 at 1;

---

1  Sparta moves for summary judgment only with regard to its duty to defend "[b]ecause the issue of whether SPARTA owes Southeastern a duty to indemnify is not yet ripe…" (Doc. 40 at 12).

2  Defendant Villie Moore (the homeowner) filed a Rule 56(d) motion, which was denied.  (Docs. 42, 44).

Doc. 42-2; Doc. 42-2; Doc. 40-3 at 2-3; Doc. 42-9 (Decltn. Hollis); Doc. 42-10 (Decltn. Kramer); Doc. 42-8 (Decltn. Bowman)).

Starting on March 25, 2008, and then on an annual basis, Southeastern treated and performed annual renewal inspections of the Moore's home per the termite bond (May 7, 2009, April 20, 2010, March 15, 2011, and March 28, 2012). (Doc. 40-2 at 5; Doc. 42-3; Doc. 42-8 (Decltn. Bowman); Doc. 42-10 (Decltn. Kramer); Doc. 42-9 (Decltn. Hollis); Doc. 40-3 at 5). In March 2013, the Moores did not renew the bond and so it lapsed. The last annual inspection/treatment of the home was conducted by Southeastern on March 28, 2012. (Doc. 40-2 at 5; Doc. 42-9 (Decltn. Hollis)). Southeastern did not inspect the home in 2013. (Doc. 42-9 (Decltn. Hollis)). In the Fall of 2014, Moore discovered active termites in the home's living room walls. She then hired a different termite and pest control company, EAL, LLC d/b/a Environmental Security, Inc. (EnSec), to remedy the infestation.

On April 27, 2016, Moore initiated a state court action in the Circuit Court of Mobile County, Alabama against Southeastern and EnSec (including Clinton Wells Killingsworth with EnSec) for termite damage to the home. (Doc. 1-1). Moore alleged bodily injury, property damage and claims for fraudulent misrepresentation, fraudulent suppression and promissory fraud, negligence, recklessness and negligence *per se*, negligent hiring, training, supervision and retention, breach of contract and equitable relief per the Made Whole doctrine. (Id.) In response, Southeastern filed a General Liability Notice of Occurrence/Claim with its insurer, Sparta, under its commercial general liability policy. On July 27, 2016, Sparta issued its insured Southeastern a reservation of rights letter, retained counsel for Southeastern, and has been defending Southeastern in the state court litigation (which remains pending) subject to same.

On July 12, 2017, Sparta initiated this action pursuant to the Declaratory Judgment Act (22 U.S.C. § 2201(a)) against its insured Southeastern, and individual Moore.  (Doc. 1).  Sparta seeks a declaration that: 1) a bona fide justiciable controversy exists; 2) the policy and amendments, provisions, endorsements and exclusions are clear and unambiguous; and 3) it does not owe Southeastern either a duty to continue defending it in the underlying state court action or a duty to indemnify it for any of the claims of the underlying action.  (Doc. 1 at 19, 23).  On May 11, 2018, Sparta moved for summary judgment against Southeastern, asserting it has no duty to defend under the policy because: 1) Southeastern never performed an "actual treatment" on the home; 2) Moore's discovery of a termite infestation and termite-related "property damage" occurred more than 24 months after Southeastern's final "renewal inspection" of the home; and 3) Southeastern failed to comply with document retention requirements.[3]  From this, Sparta contends that the insurance policy does not provide coverage for Moore's claims, such that it does not owe a duty to continue defending its insured Southeastern in the underlying state court action for Moore's claims against Southeastern.

The relevant portions of the Sparta-Southeastern insurance policy provide as follows:

**A.  COVERAGE**

**1. Insuring Agreement**

We will pay, those sums which the insured becomes legally obligated to pay as damages because of "property damage" to "real property", caused by the infestation of: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or insects as specified in the "treatment contract", for such services, which occurs after the "actual treatment" and to which this insurance applies.

The amount we will pay as damages is limited as described in paragraph B. of this endorsement.

---

3 Additionally, Sparta moved for summary judgment on Moore's claim for "bodily injury" (mental anguish), asserting that such occurred outside of the policy period (after the policy with Southeastern expired) and so is not covered.  In response Southeastern "concede[s] that Sparta is entitled to partial summary judgment on this issue[]" and that Sparta owes no duty to defend this claim.  (Doc. 42 at 5).

This replaces and is not in addition to any other "property damage" coverage that might apply under this policy.

**2. Exclusions**

This insurance does not apply to:

a. The expense of treatment, retreatment, inspection or re-inspection of any "real property".

b. Any act, error or omission an insured committed with fraudulent, dishonest, criminal or malicious purpose or intent.

c. Any "property damage" occurring before the "actual treatment" date as shown in your "treatment contract" or after the end of the policy period.

d. Any "property damage" not caused by: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or other insects identified in the "treatment contract".

e. Any spot or partial treatments.

f. Any "property damage" to "real property" that has not had a "renewal inspection" within twenty four (24) months of your last "renewal inspection" or "actual treatment".

\*\*\*

**D. ADDITIONAL DEFINITIONS**

For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions section:

1. "Actual treatment" means a complete chemical treatment, of the entire "real property", according to the "directions for use" as outlined in the "treatment contract" for the eradication of Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or other insects identified and listed on the "treatment contract". "Actual treatment" does not include spot or partial treatments.

2. "Directions for use" means all instructions listed on the chemical label and labeling referring to the concentration, mixing, application, treatment directions and any other procedures to be followed when using the chemical. "Directions for use" also means any applicable Federal, State and local regulations prevailing at the time of the chemical is administered.

3. "Treatment contract" means a written contract between you and your client, issued and dated by you in conjunction with an "actual treatment". "Treatment contract" includes the graph or description of "real property".

4. "Real property" means the structure(s) or building(s) as described in the "treatment contract". "Real Property" includes personal property.

5. "Renewal inspection" means the issuance of a written report regarding the physical inspection of the entire "real property" conducted by you within each twenty-four (24) month period after the initial "actual treatment" described in the "treatment contract".

**E.** For the purposes of coverage provided by this endorsement, the following conditions are added to **Section IV - Commercial General Liability Conditions**. Coverage is effective only if all of the following conditions are met:

1. You must complete a graph showing the areas of the "real property" illustrating treated and, untreated areas, the dimensions of the structure(s) or building(s), present and past

infestation, and present and past damage. The graph must be attached to the "treatment contract."

2.  You must charge a fee for your services.

3.  Nothing in the "Treatment Contract" shall extend or broaden the scope of coverage afforded by this endorsement.

4.  You must maintain the treatment all the written, detailed records of any and all work performed by you from the date the "actual treatment" started.

We may examine your treatment all information regarding the "actual treatment" and the "renewal inspection" of the "real property" at any time after the date of "actual treatment".

Failure to maintain such records; including but not limited to the "Treatment Contract", information regarding the "actual treatment" of the "real property", any report required by statute, ordinance or regulation of any federal, state or local government, or other pertinent information regarding the "actual treatment" of the "real property"; and/or not make them available to us will result in the denial of coverage for any claim or suit.

5.  All contracts must be in writing and signed by you and your client. All work papers must contain the date(s) of all actions taken with respect to the "real property".

6.  If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, the coverage provided by this endorsement will be excess over any other insurance, whether primary, excess, contingent or on any other basis.

(Doc. 40-1 at 52-53; Doc. 42-5).

## II.    <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c)(1)-(4) provides as follows:

**(c) Procedures.**
**(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2) *Objection That a Fact Is Not Supported by Admissible Evidence*.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3) *Materials Not Cited*.** The court need consider only the cited materials, but it may consider other materials in the record.

**(4) *Affidavits or Declarations*.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

## III.    Conclusions of Law[4]

In Alabama, "[g]eneral rules of contract law govern an insurance contract." Safeway Ins. Co. of Ala., Inc. v. Herrera, 912 So.2d 1140, 1143 (Ala. 2005). "In the absence of statutory

---

4 Plaintiff also asserts Section 1332 diversity jurisdiction in this case.  The substantive law of Alabama applies because this declaratory judgment action sounds in contract and the parties do not dispute that the insurance contract was made in Alabama. See, e.g., Protective Ins. Co. v. Plasse, 2014 WL 3898084, *8-9 (S.D. Ala. Aug. 11, 2014); Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004); Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala.1991).

6

provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." Upton v. Miss. Valley Title Ins. Co., 469 So.2d 548, 554 (Ala.1985) (quoting Life & Cas. Ins. Co. v. Whitehurst, 148 So. 164 (1933) (internal quotations omitted)).

However, Alabama courts have held that an insurance policy "shall be construed liberally in favor of the insured and strictly against the insurer. Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, which drafted and issued the policy." Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379-380 (Ala. 1996) (internal citations omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." Safeway Ins. Co., 912 So.2d at 1143. Nevertheless, "[i]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous." Woodall v. Alfa Mut. Ins. Co., 658 So.2d 369 (Ala.1995) (quoting Gregory v. Western World Ins. Co., 481 So.2d 878, 881 (Ala.1985) (internal citations and quotations omitted)).

Whether a provision of an insurance policy is ambiguous is a question of law[,]" Safeway Ins. Co., 912 So.2d at 1143, and "[t]he test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean ... In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be

ambiguous.... This means that the terms of an insurance policy should be given a rational and practical construction." Porterfield v. Audubon Indem. Co., 856 So.2d 789, 799 (Ala. 2002) (internal citations and quotations omitted). See also American Resources Ins. Co. v. H & H Stephens Const., Inc., 939 So.2d 868, 873 (Ala. 2006) (discussing the reasonably prudent person standard -- i.e., that the terms of a policy should be given a rational and practical construction).

In Alabama, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy [.]" Auto–Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996) (citing Colonial Life & Accident Ins. Co. v. Collins, 194 So.2d 532, 535 (1967) and U.S. Fidelity & Guarantee Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala. 1985)). However, the "insurer bears the burden of proving the applicability of any policy exclusion." Id. The burden rests on the party seeking coverage to prove that coverage existed within the terms of the policy. Owners Ins. Co. v. Shep Jones Const., Inc., 2012 WL 1642169, *3 (N.D. Ala. May 3, 2012).

Sparta contends there is no duty to defend its insured Southeastern due to the existence of an applicable and unambiguous exclusion for certain property damage claims. Specifically, per "A. Coverage, 2. Exclusions, f.", the following is excluded: "[a]ny 'property damage' to 'real property' that has not had a 'renewal inspection' within twenty four (24) months of your last 'renewal inspection' or 'actual treatment.'"

In response, Southeastern argues that "[t]here are at least two ways to interpret this exclusion[]" and that Sparta interprets the exclusion too broadly resulting in no coverage for property damage that occurred while the property was bonded. (Doc. 42 at 8). The Court cannot agree. The policy exclusion is clear and unambiguous as written. The applicability of the exclusion hinges on whether the property had a renewal inspection within 24 months of the

property's last inspection _or_ treatment.  If yes, then exclusion f. would not apply and the property damage would be further assessed.  If no, then exclusion f. would apply, and there would be no coverage such that the property damage is irrelevant.  In sum, the exclusion is not tied to when, how, or what type of _damage_ occurred (or even when the termites were discovered or began their feasting), but rather, the exclusion is tied to _the inspection or treatment dates_ of the property.  Thus, Sparta has satisfied its burden of establishing the applicability of the policy exclusion, as the foregoing is the "rational and practical construction[]" of the exclusion, which is entitled to be enforced as written.

Southeastern conducted the last renewal inspection of the Moore home on March 28, 2012. (Doc. 40-2 at 5; Doc. 42-3; Doc. 42-8 (Decltn. Bowman); Doc. 42-10 (Decltn. Kramer); Doc. 42-9 (Decltn. Hollis)).  There is no record before the Court of any termite inspections or treatment of the Moore home by Southeastern after that date, much less within 24 months after that date.[5] Moore discovered termites in her home (with property damage) in the Fall of 2014.  Thus, at least 29 months passed since the "last 'renewal inspection'" of the Moore's property by Southeastern. As such, Sparta's motion is **GRANTED** on the issue of property damage based on this exclusion.

Second, Sparta contends Southeastern never performed an "actual treatment" and failed to comply with document retention requirements.  Because the Court has concluded that the unambiguous 24 month property damage exclusion applies, these issues are **MOOT.**

---

5  A 5/3/16 General Liability Notice of Occurrence/Claim form provided by Sparta indicates that Moore contacted Southeastern "back around fall/winter of 2015 time frame" and Southeastern "sent someone out to look at the home (Steve Bowman)," but that Moore did not contact Southeastern again until Southeastern received notice by Moore's attorney.  (Doc. 40-6 at 2).  However, there is no indication as to what precisely what Southeastern did at the Moore property in that time frame (at best, it appears Southeastern possibly "informed her that it would cost hundreds of dollars to reinstate her as a customer and apply spot treatments." (Doc. 40-8 at 1-2). Regardless, the "fall/winter 2015 time frame" is even _further_ beyond the 24 month window.

Accordingly, it is **ORDERED** that Sparta's partial motion for summary judgment (Docs. 39, 40) is: 1) **GRANTED** as to its duty to defend Southeastern based on Moore's bodily injury (mental anguish) claim; and 2) **GRANTED** as to its duty to defend Southeastern based on Moore's property damage claim per the 24 month exclusion but **MOOT** as to the remaining contentions.

Finally, in keeping with persuasive authority within the Eleventh Circuit, the undersigned will *sua sponte* address the duty to indemnify -- as a matter of law -- in light of the Court's ruling on the duty to defend and even though Sparta did not move for summary judgment on same (as unripe). The Court has determined that Sparta owes no duty to defend Southeastern. This renders the issue of indemnity ripe. Indeed, this finding is necessarily dispositive of the duty to indemnify claim: "a judicial determination of no duty to defend compels a finding of no duty to indemnify." Essex Ins. Co. v. Foley, 827 F.Supp.2d 1326, 1331 (S.D. Ala. 2011) (citing Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co., 657 F.3d 1135, 1146 (11th Cir. 2011); Geovera Spec. Ins. Co., 831 F. Supp. 2d at 1311-1312 ("As the duty to defend is broader than the duty to indemnify, if a court determines there is no duty to defend, as a matter of law there cannot be a duty to indemnify[]). See also e.g., Travelers Prop. Cas. Co. of Am. v. Salt 'N Blue LLC, 2018 WL 2095483, *2 (11th Cir. May 7, 2018) (if there is no duty to defend, "it necessarily follows that…[there is]..no duty to indemnify…[]"); Doe v. Hudson Spec. Ins. Co., 2017 WL 979263, *4 (S.D. Fla. Mar. 14, 2017) (same); Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F.Supp.2d 1319, 1322 (S.D. Fla. 2009) (same) Atain Spec. Ins. Co. v. Miami Drywall & Stucco, Inc., 2012 WL 3043002, *2 (S.D. Fla. Jul. 25, 2012) (same). As such, the Court *sua sponte* finds, as a matter of law, that Sparta's request for declaratory relief as to its duty to indemnify is **GRANTED.**

In light of the foregoing, and because Sparta's Complaint seeks only a declaration that it

owes no duty to defend and no duty to indemnify -- claims which have now been resolved -- there

are no remaining claims before the Court.  Thus, Sparta's request for declaratory relief is due to be

**GRANTED** as follows: judgment shall issue in favor of Plaintiff and against Defendants and it is

**DECLARED** that --

    1) a bona fide justiciable controversy exists among the parties which should be resolved;
    2) the relevant Sparta exclusion, as detailed *supra*, is clear and unambiguous; and
    3) Sparta does not have a duty to defend or indemnify Southeastern or Hollis for any of the underlying claims alleged by Moore.

    **DONE** and **ORDERED** this the **18**[th] day of **July 2018.**

                    /s/ Kristi K. DuBose
                    **KRISTI K. DuBOSE**
                    **CHIEF UNITED STATES DISTRICT JUDGE**

11